UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LUCIA CONTRERAS, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-30085-KPN |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO
AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 12 and 14)
April 12, 2010

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI")

benefits.  *See* 42 U.S.C. §§ 405(g),1383(c)(3).  Lucia Contreras ("Plaintiff") asserts that

the Commissioner's decision denying her such benefits -- memorialized in a July 25,

2008 decision of an administrative law judge -- is in error.  She has filed a motion

seeking to reverse the decision and the Commissioner, in turn, has moved to affirm.

With the parties' consent, this matter has been assigned to the undersigned for

all purposes, including entry of judgment.  *See* 28 U.S.C. § 636(c).  For the reasons

which follow, the court will deny that the Commissioner's motion and grant Plaintiff's

motion to the extent it can fairly be read to include a request for a remand.  The court

will also require, for reasons which will become evident, that the remanded hearing be held before a different administrative law judge.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. Background

Plaintiff, fifty-four years of age at the time of the Commissioner's decision, has an eleventh-grade education and previously worked as a clothing packer and day care provider. (Administrative Record ("A.R.") at 113, 128.) She last worked on November 12, 2003. (*Id.* at 127.) The following background traces Plaintiff's medical history, several consultative assessments, and the procedural history of this case.

A. Medical History

Plaintiff was treated at the Gandara Mental Health Center ("Gandara") from October of 2005 through 2997 for depression, increased anxiety and insomnia. (A.R. at 234-40, 250-62.) She was variously found to suffer from moderate to severe isolation, mild paranoia and attention problems, moderate to severe intrusive thoughts and flashbacks, and severe depression and sleep disturbance. (A.R. at 224, 228, 232, 251, 253, 355.) She was also prescribed Trizidene, Prozac and Kloniprin. (A.R. at 224, 226, 230, 234, 257, 262.) These symptoms remained acute over time. (A.R. at 229, 233, 254.) Her clinicians consistently gave her a Global Assessment of Functioning ("GAF") score of 55, which indicates moderate difficulties. (A.R. at 224-40, 250-62, 301.)[1]

---

[1] "A GAF score represents 'the clinician's judgment of the individual's overall level of functioning.' The GAF score is taken from the GAF scale, which 'is to be rated with respect only to psychological, social, and occupational functioning.' The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Munson v. Barnhart*, 217 F. Supp. 2d 162, 164 n.2 (D. Me. 2002) (quoting American Psychiatric Ass'n., *Diagnostic and Statistic Manual of Mental Disorders* 34 (4th ed. TR 2000) ("DSM-IV-TR") at 32, 34 (appendix)). *See also Walker v. Barnhart*, 2005 WL 2323169, at *4 n.3 (D. Mass. Aug. 23, 2005). Scores of 51-60 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DSM-IV-TR at 34.

Mental status examinations at Gandara in October and December of 2005 revealed that Plaintiff displayed cooperative behavior and good judgment, but was depressed, tearful and anxious, lacked energy, had auditory hallucinations and was quite forgetful.  (A.R. at 239, 261-62.)  In an undated evaluation (which nonetheless has a faxed date of October 24, 2007), Dr. Mary Barkalow, a psychiatrist, diagnosed Plaintiff with major depression, anxiety disorder, Post Traumatic Stress Disorder ("PTSD") and panic attacks.  (A.R. at 301.)  Dr. Barkalow reported that Plaintiff had difficulty following directions and was unable to deal with routine stress but did not require supervision. (A.R. at 301-03.)  He also assigned her a GAF score of 45.  (A.R. at 301.)[2]

From November of 2005 through January of 2008, Plaintiff was also treated at Northgate Medical where she was diagnosed with anxiety, depression and insomnia. (A.R. at 243-47, 264-67, 324-34.)  On November 21, 2008, after experiencing a panic attack, Plaintiff was seen at Baystate Medical Center and was diagnosed with "an episode of depression."  (A.R. at 181, 323.)  Notes there indicate that she had variously been prescribed Celexa, Zoloft, and Tryodine.  (A.R. at 243, 245.)

From October of 2007 to May of 2008, Plaintiff was treated as well at the Valley Psychiatric Service Center where she was seen by Alma Flores, a clinician, and Dr. Aaron Leavitt, a psychiatrist.  (A.R. at 343-57.)  Plaintiff advised Ms. Flores that she felt perpetually sad and fearful, disliked leaving her house, experienced abuse as a child and during her marriage, and had trouble even taking care of herself.  (A.R. at 345-46, 349.)  Dr. Leavitt diagnosed her with a "major depressive disorder, recurrent moderate."

---

[2]  A GAF score of 41-50 indicates a serious impairment in social, occupational, or school functioning.  DSM-IV-TR at 34.

(A.R. at 344.)  On May 30, 2008, Ms. Flores evaluated Plaintiff's ability to perform work-related activities and opined that major depression prevented her from concentrating and paying attention to instructions but that her impairments did not affect her ability to respond appropriately to supervision, co-workers and work pressures.  (A.R. at 353-56.) Plaintiff was also deemed slightly limited in her ability to carry out short and simple instructions but moderately impaired in her ability to understand and carry out detailed instructions.  (A.R. at 354.)

B.  Consultative Assessments

On March 14, 2007, Dr. Sarah Dreher, a psychologist, examined Plaintiff and prepared a functional report of her mental impairments.  (A.R. at 278-80.)  Dr. Dreher, who indicated that Plaintiff "gives the impression that she is trying to disappear," reported that her anxiety and depression were becoming worse lately, diagnosed PTSD (with classic signs thereof) and major depressive disorder, and assigned a GAF score of 53.  Dr. Dreher's mental status examination of Plaintiff revealed normal thought processes, with decent insight and judgment but difficulty with short-term memory and average intelligence, and described Plaintiff as "unable to work."  (A.R. at 278-80.)

Jon Perlman, a non-examining state agency psychologist, prepared a mental Residual Functional Capacity ("RFC") assessment and psychiatric review on March 21, 2007.  (A.R. at 282-99.)  He concluded that Plaintiff suffered from anxiety-related disorders, which imposed mild restrictions on her daily activities and moderate restrictions in her ability to maintain social functioning, concentration, persistence and pace.  He noted that Plaintiff was not significantly limited in her ability to understand and carry out short and simple instructions and found her capable of completing routine

simple tasks and sustaining concentration for at least two hours.  He also noted that

Plaintiff's predominant disturbance of anxiety was evidenced by recurrent and intrusive

recollections of traumatic experiences which were the source of her marked distress.

(A.R. at 291.)

On October 25, 2007, Dr. Celeste Derecho, another non-examining state agency

psychologist, also completed a psychiatric review and mental RFC.  (A.R. at 305-22.)

Dr. Derecho noted the same marked distress as Dr. Perlman, stated that Plaintiff was

not significantly limited in her ability to understand and carry out short and simple

instructions but had moderate restrictions in maintaining social functioning and in

maintaining concentration, persistence and pace.  (A.R. at 315.)

C. Procedural History

On July 14 and 19, 2006, Plaintiff filed applications, respectively, for SSI and

SSDI benefits in which she claimed to have been disabled since August 30, 2003,

because of depression.  (A.R. at 106-15, 126-27.)  Plaintiff's applications were denied

both initially on March 30, 2007, and upon reconsideration on October 30, 2007.  (A.R.

at 65-68, 70-72.)  At Plaintiff's request, a hearing was held before an administrative law

judge, Peter J. Martinelli ("ALJ"), on May 16, 2008, at which Plaintiff, her sister Maritza

Contreras, and a vocational expert testified.  (A.R. at 29-61.)  In a July 25, 2008

decision, the ALJ concluded that Plaintiff was not disabled.  (A.R. at 11-24.)  The

Appeals Council denied Plaintiff's request for review in a decision dated on April 17,

2009 (A.R. at 3-5), leading to the instant action.

III.  DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an

6

insured status and, prior to the expiration of that status, was under a disability.  *See* 42 U.S.C. § 423(a)(1).  In some contrast, an individual is entitled to SSI benefits if she is able to demonstrate both a disability and financial need.  *See* 42 U.S.C. § 1381a. Neither Plaintiff's SSDI insured status nor her financial need for purposes of SSI eligibility is at issue.

A.  Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual is considered disabled under the Act

> only if [her] physical and mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed?  If [s]he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which

7

significantly limits the claimant's physical or mental capacity
to perform basic work-related functions."  If [s]he does not
have an impairment of at least this degree of severity, [s]he
is automatically not disabled.

Third, does the claimant have an impairment equivalent to a
specific list of impairments in the regulations' Appendix 1?  If
the claimant has an impairment of so serious a degree of
severity, the claimant is automatically found disabled.

. . . .

Fourth . . . does the claimant's impairment prevent [her] from
performing work of the sort [s]he has done in the past?  If
not, [s]he is not disabled.  If so, the agency asks the fifth
question.

Fifth, does the claimant's impairment prevent [her] from
performing other work of the sort found in the economy?  If
so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions:

Plaintiff has not engaged in substantial gainful activity since the alleged onset of her

disability (question one); Plaintiff has impairments which are "severe," including

depression and anxiety disorders,  but which do not meet or medically equal one of the

listed impairments in Appendix 1 (questions two and three); and Plaintiff is able to

perform her past relevant work as a packing line worker (question four) and is,

therefore, not disabled.  As a result, the ALJ did not address the fifth question, namely,

Plaintiff's residual functional capacity to perform yet other work in the national economy.

(A.R. at 19-23.)

B.  Plaintiff's Challenge to the Decision

In seeking outright reversal of the Commissioner's decision, Plaintiff asserts that

8

the administrative record has been fully developed, that she has borne her burden of demonstrating an inability to do her past relevant work, that the evidence of record indicates that she is disabled, and that further administrative proceedings would simply delay the receipt of benefits.  More particularly, Plaintiff makes three arguments:  first, the ALJ failed to properly evaluate and credit the opinion of her treating sources; second, the ALJ failed to find that her PTSD was a severe impairment; and third, the ALJ's determination of her residual functional capacity was not supported by substantial evidence in the record.

As will become evident, Plaintiff's arguments are closely related.  As will also became evident, the ALJ's findings and conclusions are frequently -- indeed too often -- distorted by a misreading of the evidence and personal speculation.  Unfortunately, this is not the first time that this administrative law judge has acted in this manner.  *See Rodriguez v. Astrue* --- F. Supp. 2d --- 2010 WL 938147 (D. Mass. Mar. 11, 2010) and decisions cited therein.

1.  Evaluation and Weight of the Treating Physician's Opinion

A treating physician's opinion about the nature and severity of an impairment may be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  This is because such physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  *Id.*  However, the

opinion of a treating physician may be stripped of its controlling weight "if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." *Castro v. Barnhart*, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citations omitted).  *See also Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (similar).  In effect, an administrative law judge is given wide discretion to consider all other medical opinions and weigh each of them.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  *See also Cruz v. Astrue*, 2007 WL 1442354, at *7 (D. Mass. May 2, 2007) ("[A]n administrative law judge may consider any medical opinions from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations.").

Here, Plaintiff claims that the ALJ not only failed to evaluate Dr. Barkalow's diagnosis of PTSD, as well as her opinion concerning Plaintiff's residual functional capacity, but gave it no weight at all.  *See* Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 ("adjudicators must always carefully consider medical source opinions about any issues, including opinions on issues that are reserved to the Commissioner.").  *See also Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) (concluding that the administrative law judge's "brief statement of alternative support" for assigning less weight to a doctor's report was "not sufficiently developed to allow [the court] to uphold the ALJ's decision").  Indeed, it appears that the ALJ rejected Dr. Barkalow's report, not on the record, but because of his prior experience with her:

> The GAF of 45 in Dr. Barkalow's report appears to be an attempt to imply consistency with the rest of the accommodating report, *as her reports in the past have been*

> *noted as internally inconsistent* when she includes the GAFs
> from treatment with an accommodating report of limitations.
> As such, it is not given great credence.

(A.R. at 22 (emphasis added).)  There is nothing in the ALJ's decision, however, which

points to any internal inconsistency, let alone an "accommodation," in Dr. Barkalow's

record in *this* case.  Lest there be any doubt about the meaning of the ALJ's statement,

it should be noted that he immediately went on to state that "Dr. Barkalow is quickly

earning a position of an unreliable source, as the accommodating nature of her reports

is very obvious."  (*Id.*)  As a result, the ALJ did not accept "the totality of the

assessments" set forth in Dr. Barkalow's assessment (A.R. at 301-03) or, for that

matter, the assessment by Ms. Flores, Plaintiff's clinician.  (A.R. at 353-56).

To be sure, the Commissioner now argues that Dr. Barkalow's opinions were not

well supported by the medical record.  The court disagrees.  First, "[i]t is not the task of

the court (or, for that matter, counsel for the Commissioner) to articulate for the first time

at the appeals stage 'good reasons' for rejecting a treating source's opinion."  *Ambrose*

*v. Astrue*, 2008 WL 648957 at *5-*6 (D. Me. Mar. 5, 2008) (citing *Rodriguez*, 647 F.2d at

222).  Second, the ALJ's reliance on his own experience with Dr. Barkalow -- without

further explanation to or an opportunity for Plaintiff to respond -- was, in a word,

improper.  In the end, there was insufficient evidence of record to reject Dr. Barkalow's

diagnosis of PTSD.

2.  <u>PTSD as Severe Impairment</u>

Plaintiff next argues that, at step two of the five-step protocol, the ALJ failed to

properly find that Plaintiff's PTSD was "severe."  An impairment is severe if it imposes a

significant limitation on the ability to perform basic work activities.  *See Figueroa-*

*Rodriguez v. Sec'y of Health & Human Servs.*, 845 F.2d 370, 372 (1st Cir. 1988).

In response, the Commissioner argues that neither Dr. Leavitt nor other mental health providers at Northgate Medical diagnosed PTSD and that, on November 2, 2007, physicians at the Baystate Health Center only concluded that Plaintiff suffered from depression. Moreover, the Commissioner asserts that, aside from Dr. Barkalow's report, the Gandara clinicians noted only moderate intrusive thoughts or flashbacks and did not find that Plaintiff suffered from PTSD. Finally, the Commissioner asserts that, even if the ALJ erred in not including PTSD as a severe impairment, such an error would not be grounds for reversal or even remand.

What the Commissioner fails to acknowledge, however, is that a claimant must only make a *de minimis* showing of severity at step two of the five-step protocol. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). Finding an impairment *non*-severe is only appropriate where the condition is so slight that it cannot feasibly have more than a minimal impact on an individual's ability to work, thereby screening out groundless claims. *Id.* Here, however, Plaintiff's claim is hardly groundless. Not only had Dr. Barkalow diagnosed Plaintiff with PTSD, but two evaluations by medical consultants also included PTSD as a diagnosis. Notwithstanding this evidence, the ALJ undertook no analysis whatsoever of the PTSD diagnosis and only deemed Plaintiff's depression and anxiety disorders severe. In the court's opinion, the objective medical evidence of record required a finding that Plaintiff's PTSD at least met the *de minimis* severity standard.

3. Residual Functional Capacity

Plaintiff's final argument -- that the ALJ's determination regarding Plaintiff's

residual functional capacity was not supported by substantial evidence -- is related to the first two.  In essence, the ALJ found that Plaintiff had retained the residual functional capacity to do her past work as a packer.

As indicated, however, the ALJ's failure to include PTSD as a severe impairment adversely affected his RFC analysis.  To be sure, the Commissioner argues that, when an administrative law judge finds one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC.  More importantly, the Commissioner argues, the specific diagnosis has little bearing on the question of functional limitations, which is what the RFC determines.  Here, the Commissioner contends, the objective medical evidence indicates that even if Plaintiff carried a PTSD diagnosis, the condition did not significantly limit her ability to perform basic work activities.

The Commissioner's present arguments notwithstanding, the ALJ took quite a cavalier attitude towards Plaintiff's descriptions of her symptoms and, hence, her capacity to work.  For example, the ALJ completely dismissed Plaintiff's claim of having left her employment because of depression.  Instead, referring to Plaintiff's testimony about "having things going on inside her," the ALJ concluded that "this would be a logical concomitant to evading a harassing estranged husband."  (A.R. at 22.)  *See Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991) ("An ALJ is simply not at liberty to substitute his own impression of an individual's health for uncontroverted medical opinion.");  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (same).  Compare this amateurish conclusion to Dr. Dreher's description of Plaintiff's memories of abuse:

> She finds it very difficult to talk about this, as she is ashamed

and feels everything is her fault.  However, the memories run through her mind "like a tape."  She married a man and had two children by him:  a girl, now 12, and a boy, 9.  They are separated now.  She says he has been diagnosed as schizophrenic, and recalls him as physically and verbally cruel, making her feel "like garbage."  Sex with him felt like rape.  Because of the trauma suffered as a child, she thought anybody had the right to treat her any way they wanted.

(A.R. at 278-79.)  After further describing Plaintiff's mental status, Dr. Dreher concluded

as follows:

Ms. Contreras shows classic signs of Posttraumatic Stress Disorder of long standing.  Individual psychotherapy is strongly recommended.  However, it is very difficult for her to talk about herself, and she would profit most from a well-trained professional with experience in PTSD.  It is also mandatory that she be seen by a woman, not only for psychotherapy but for her medical needs as well.  She is having a real problem with her current PCP, a male MD who insists on micromanaging her medications and her life in general.  This MD insisted that she have me send a complete report of everything said between us.  Needless to say, this is unacceptable.  She needs to protect her privacy, and would be especially fearful of revealing herself to a man, given her childhood history and years spent with a schizophrenic husband.

(A.R. at 280.)

The ALJ's conclusion is also in contrast to Plaintiff's other testimony:  that she does not like to leave her house (A.R. at 47), that she often lacks the motivation to prepare dinner for her children (A.R. at 41), that she suffers from insomnia and her lack of sleep makes it difficult for her to concentrate (A.R. at 42, 223, 225), that she is preoccupied with thoughts of something happening to her (A.R. at 43), that she does not regularly pay her bills (A.R. at 45), and that she does not get along with her neighbors (A.R. at 47).  Plaintiff's sister, too, testified that she herself needs to make

14

sure that things run smoothly at Plaintiff's household (A.R. at 21) and checks in on her on a daily basis (A.R. at 52). In all, the ALJ's dismissive attitude towards Plaintiff is belied by the record evidence. *See Chelte v. Apfel*, 76 F. Supp. 2d 104, 108 (D. Mass. 1999) ("ALJ may not 'substitute his own layman's opinion for the findings and opinion of a physician.'") (quoting *Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987)).

Granted, the ALJ noted Plaintiff's testimony and acknowledged that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (A.R. at 21.) Nonetheless, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with his residual functional capacity assessment. (*Id.*) This conclusion simply goes against the weight of the record, a problem compounded by the fact that the ALJ's assessment improperly disregarded the diagnosis of PTSD and, in turn, its effect on Plaintiff's residual functional capacity.

IV. Conclusion

Plaintiff seeks to have the court reverse the Commissioner's decision with instructions to award benefits rather than remand the matter for further proceedings. Such a decision, of course, is not without precedent. *See, e.g.*, *Rodriguez*, 2010 WL 938147. Here, however, Plaintiff's eligibility for benefits is not entirely clear; rather, the decision regarding her eligibility has been compromised by flaws in the administrative process. Nor has this matter been unduly delayed administratively. *See Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001) (noting that other circuits "have exercised what we view as a form of equitable power to order benefits in cases where the entitlement is

not totally clear, but the delay involved in repeated remands has become

unconscionable.").  Accordingly, the case will be remanded for a new hearing, this time

before a different administrative law judge.

For the reasons stated, therefore, the court denies the Commissioner's motion to

affirm and allows Plaintiff's motion to the extent it can fairly be read to request a

remand.

DATED:  April 12, 2010

/s/  Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge